UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY MUNDY,<br><br>          Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK,<br><br>          Defendant. | No. 1:24-CV-06736<br><br>VIOLATIONS OF:<br><br>1. N.Y. Gen. Bus. Law § 520-e;<br>2. 15 U.S.C. 1681(s)2-b;<br>3. 15 U.S.C. 1691, *et seq.* |

### COMPLAINT

NOW COMES Plaintiff, ANTHONY MUNDY ("Plaintiff"), by and through his attorneys, Law Office of Caridi, P.C., and for his Complaint against Defendant, JP MORGAN CHASE BANK ("Chase" or "Defendant"), hereby alleges as follows:

### NATURE OF ACTION

1. This is an action for actual and statutory damages for violations of N.Y. Gen. Bus. Law § 520-e; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; and for violations of 12 C.F.R. 1002.9 as promulgated by the Consumer Protection Bureau by the authority granted it under Regulation B and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*

### JURISDICTION AND VENUE

2. This Court has jurisdiction under the 15 U.S.C. § 1681p of the FCRA and pursuant to 28 U.S.C. §§ 1331 and 1337.

3. This Court has supplemental jurisdiction over the state claims brought by Plaintiff as all claims arise from the same common nucleus of facts.

4. Venue and personal jurisdiction are proper in this District because Defendant conducts substantial business within the Eastern District of New York, including maintaining

multiple banking branches and business relationships with consumers within this District. Furthermore, a material portion of the events or omissions giving rise to this claim, including communications with plaintiff and actions impacting Plaintiff's accounts, occurred within this District. While Defendant's main corporate headquarters is located in the Southern District of New York, Its significant business presence within the Eastern District satisfies venue and jurisdictional requirements under 28 U.S.C. § 1391(b).

**PARTIES**

5. Plaintiff is a natural person at all times relevant residing in New York County, in New York City, New York.

6. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Plaintiff is a "consumer" at that term is defined by 15 U.S.C. § 1602(h) because this complaint arises from Chase's offer and extension of credit to Plaintiff, a credit card holder, for personal, family or household purposes.

8. Further, Plaintiff is an applicant as that term is defined by 12 C.F.R. 1002.2(e)

9. At all times, Plaintiff was a "holder" as that term is defined by N.Y. Gen. Bus. Law § 511(4).

10. Chase is a corporation whose corporate headquarters is located in the State of New York and conducts business in the State of New York.

11. Chase is a "person" as that term is defined by 15 U.S.C. § 1681a(b).

12. Chase is an "issuer" as that term is defined by N.Y. Gen. Bus. Law § 511(3).

13. Chase is a "creditor" as that term is defined by 15 U.S.C. § 1602(f), 12 C.F.R. § 1026.2(a)(17), and 12 C.F.R. 1002.2(l) because at all relevant times, and in the ordinary course of

its business, Chase extended or offered to extend consumer credit for which a finance charge was imposed and payable in more than four installments.

14. Both parties are a "person" as that term is defined by N.Y. Gen. Bus. Law § 511(2).

15. At all relevant times to this Complaint, Defendant acted through its agents employees, officers, members, directors, heir, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers.

## FACTUAL ALLEGATIONS

16. For over 30 years, Mr. Mundy, both personally and through his business entities, has maintained a banking relationship with Chase.

17. During this time, Mr. Mundy has had numerous credit cards and personal loans with Chase in which he maintained his payments and the Parties maintained a mutually beneficial financial relationship with Chase.

18. As of January 2024, Mr. Mundy had a personal Slate Visa credit card issued by Chase with account number ending in 8263 and two business credit cards with account numbers ending in 3361 and 7279 as well as several checking accounts with Chase.

19. It was, therefore, with considerable surprise and concern that in early January 2024, Mr. Mundy received formal notification from Chase indicating its intention to close his personal checking account, two business checking accounts, his personal credit card account (which had a zero balance and was in good standing), and the two business credit card accounts (also in good standing).

20. The closure notice was dated January 2, 2024, delivered to Mr. Mundy on or around January 9, 2024, and stipulated that these accounts would be terminated no later than January 28, 2024.

21. By any measure, Chase's decision to close Mr. Mundy's accounts would be considered an adverse action under 12 C.F.R. 1002.2.

22. However, Chase's adverse action notice, dated January 2, 2024, failed to meet the requirements of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 and Regulation B, 12 C.F.R. § 1002.9(a)(2)(i) and (ii).

23. Specifically, the notice did not include the mandatory antidiscrimination language, nor did it provide the contact information for the appropriate regulatory body that enforces ECOA compliance. This omission materially affected Plaintiff's ability to assert his rights under ECOA and deprived him of essential information necessary to challenge the adverse action in a timely and informed manner.

24. Additionally, Chase's decision to close Mr. Mundy's accounts was predicated on a vague and unsupported references to Plaintiff's alleged "connection to a publicly reported financial investigation." Despite Plaintiff's numerous attempts to obtain clarification, including phone calls, in-person visits and a formal letter from counsel, Chase consistently failed to provide any substantive or specific information about the nature or relevance of this purported investigation. The lack of specificity not only deprived Plaintiff of the opportunity to respond meaningfully but also suggest that the cited reason was either inaccurate or a pretext for an arbitrary, discriminatory, or unjustified adverse action.

25. Understandably alarmed, Mr. Mundy sought immediate clarification from Chase regarding the rationale behind these actions and sought this clarification in many ways.

26. On January 9, 2024, Mr. Mundy called Chase to find out what "public investigation" Chase was referencing in its letter dated January 2, 2024.

27. However, despite being transferred to a supervisor, Mr. Mundy was provided no

further detail beyond the ambiguous statement of a "public investigation."

28. In response to the call, Chase sent Mr. Mundy a letter dated January 18, 2024, in which it stated that Chase "regularly review[s] relationships and in [Mr. Mundy's] case, Chase has made the business decision to discontinue the relationship."

29. Again, this letter failed to contain any antidiscrimination language or information regarding which regulatory body Mr. Mundy could contact regarding Chase's actions as required by 12 C.F.R. 1002.9(a)(2)(i) and (ii).

30. Disconcerted by the lack of information he was able to obtain over the phone, Mr. Mundy went to his local Chase branch around this time and sat with a bank manager to discuss Chase's decision to close all of his accounts and the "public investigation" upon which the decision was made.

31. It was during this branch visit that the manager, perhaps unknowingly, read the note placed on Mr. Mundy's accounts that Chase instructed its employees to "not discuss the accounts" with Mr. Mundy.

32. Exhausted in his attempts to find out about a "public investigation" or the reason Chase closed his accounts, Mr. Mundy engaged his accountant to research any public investigations into him or his companies and retained an attorney to contact Chase on his behalf.

33. On or around January 26, 2024, Mr. Mundy's counsel sent a letter to Chase asking for clarification of the "public investigation."

34. However, by May, neither Mr. Mundy nor his counsel had yet to receive a response to the letter sent to Chase in January and Mr. Mundy contacted the Better Business Bureau (BBB) to file a complaint on May 14, 2024.

35. Mr. Mundy was soon contacted by "Debbie," an employee of Chase who assured

Mr. Mundy that she could assist him with his complaint.

36. However, despite multiple attempts to follow up with Debbie, Mr. Mundy never received a response to the complaint or any communications beyond that initial phone call.

37. It was finally July when Mr. Mundy's counsel received a response from Chase regarding Mr. Mundy's inquiries and quest to find out about a "public investigation" referenced in its January 2, 2024 letter.

38. In its letter dated June 28, 2024, Chase represents that the reason for its decision to end its relationship with Mr. Mundy and to close all of Mr. Mundy's credit cards could be found at https://apps2.com.ohio.gov/secu/FinalOrders/ and https://brokercheck.finra.org/.

39. However, these websites only reference investigations into Mr. Mundy's securities license in the years 2000 and 2007 and could not substantiate or explain Chase's claim that it closed Mr. Mundy's credit cards due to a "public investigation" in 2024.

**Chase then begins to report the two business accounts on Mr. Mundy's personal credit report**

40. When Mr. Mundy was first alerted to changes to his credit profile in April 2024, he found that Chase had started reporting his two business credit cards on his personal credit report.

41. Chase was reporting the two credit cards as his personal obligation, as 60-days late, and both accounts were missing positive credit information from the credit profile(s).

42. Despite Plaintiff making timely payments on the two business accounts for the ten months preceding April 2024, Chase failed to reflect this accurate payment history in its credit reporting.

43. This omission of positive credit history resulted in significant and detrimental inaccuracies in Plaintiff's credit profile, including a loan for the construction of a pool on rental

property and a debt consolidation loan.

44. While the 60-day delinquencies were accurate, both accounts were missing any notation that the debts owed on each account were incurred as business debt and were positive payment history.

45. Mr. Mundy filed disputes with all three credit reporting agencies to correct the missing information and provided proof of the payments that had been made prior to April 2024.

46. Upon information and belief, in complying with their obligations under the FCRA, each of the credit reporting agencies would have notified Chase of the disputes within five days of receipt and Chase would have been required to conduct a reasonable investigation into its reporting of Mr. Mundy's accounts.

47. However, on or around May 15, 2024, Mr. Mundy received the results of the three disputes and was disappointed to find that none of the inaccuracies had been fixed and none of the missing positive credit history had been reported by Chase.

48. As a result of the accounts being reported as personal debts and without any of the positive payment history reporting on the two accounts, Mr. Mundy's credit score dropped significantly.

49. Further, with the information now available to his other creditors, Mr. Mundy began to receive notification that his other credit cards were closing his available credit.

50. Mr. Mundy was soon after denied a loan to construct a pool for a rental property he owns and was denied a debt consolidation loan.

## COUNT I
## CHASE VIOLATED N.Y. Gen. Bus. Law § 520-e

51. Plaintiff respectfully requests an award of statutory damages pursuant to N.Y. Gen. Bus. Law § 349(h), in the amount of $1,000. Additionally, Plaintiff seeks treble damages pursuant

to the statute, given the willful and deceptive nature of Defendant's conduct, including its failure to provide the requisite 45 - day notice of account closure and its misleading reference to a "public investigation." Plaintiff asserts that defendants actions were not merely negligent but intentional, warranting the imposition of treble damages to deter future violations of the law.

52. In its initial, January 2, 2024 letters to Mr. Mundy, Chase did not provide for the stated that the account(s) would be closed, Chase did not provide Mr. Mundy with the statutorily prescribed minimum notice period of 45-day. N.Y. Gen. Bus. Law § 520-e(2)

53. Pursuant to New York General Business Law § 349(h), Mr. Mundy is entitled to recover statutory damages of up to $1,000 for Chase's deceptive acts and practices in its failure to provide the requisite 45-day notice.

54. Plaintiff requests an award of the statutory maximum amount, reflecting the nature of the deceptive conduct and the harm suffered.

55. Further, Plaintiff seeks reimbursement for reasonable legal fees and costs incurred in prosecuting this action, as authorized under New York General Business Law § 349(h).

56. Plaintiff also seeks any additional relief the Court deems just and proper, including, but not limited to, punitive damages as the Court may deem appropriate.

### **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests judgment be entered against Defendant for negligent or willful noncompliance with N.Y. Gen. Bus. Law § 520-e, as detailed above, and prays for the following:

a) Actual damages to be proven at trial pursuant to N.Y. Gen. Bus. Law §349(h);

b) Statutory damages of $50.00 pursuant to N.Y. Gen. Bus. Law §349(h);

c) Treble damages of $1,000.00 pursuant to N.Y. Gen. Bus. Law §349(h);

d) Punitive damages and equitable relief including, but not limited to, enjoining Defendant from further FCRA violations, pursuant N.Y. Gen. Bus. Law §349(h);

e) The costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to N.Y. Gen. Bus. Law §349(h); and

f) Any further legal and equitable relief as this Honorable Court deems just and proper.

## COUNT II
## CHASE VIOLATED 15 U.S.C. § 1681(s)2-b

57. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-47.

58. After receiving Plaintiff's dispute regarding the business accounts being reported on Mr. Mundy's personal credit report, Chase failed to reasonably reinvestigate its reporting of the information regarding the accounts reporting on Plaintiff's consumer report.

59. Chase violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation with respect to the information disputed by Plaintiff, by failing to review all relevant information regarding Plaintiff's dispute, by failing to accurately report the results of the investigation to the three credit bureaus, and by failing to permanently and lawfully correct its own records to prevent the re-reporting of Chase's representations to the credit bureaus.

60. Further, Chase's unwillingness to report ten on time payments on two accounts created a credit profile for Mr. Mundy that was inaccurate or, at the least, misleading and caused Mr. Mundy actual damages in the form of credit denials, loss of reputation, and lost business opportunities.

61. Chase is liable to Mr. Mundy for the actual damages he suffered as a result of Chase's unreasonable and wanton disregard of Mr. Mundy's concerns expressed in his disputes, entitling Plaintiff to recover actual damages pursuant to 15 U.S.C. 1681n.

62. Chase's conduct, action, and inaction were willful, rendering Chase liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

63. In the alternative, Chase was, at a minimum negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

64. Plaintiff is entitled to recover costs and attorneys' fees from Chase, pursuant to 15 U.S.C. § 1681n and / 15 U.S.C. § 1681o.

### **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests judgment be entered against Defendant for negligent or willful noncompliance with 15 U.S.C. § 1681 as detailed above. In light of Defendant's willful disregard for Plaintiff's rights under federal and state law, Plaintiff seeks an award of punitive damages to deter future misconduct of this nature. Defendant's repeated failure to rectify known inaccuracies in Plaintiff's credit report, coupled with its ongoing refusal to provide specific reasons for the account closures, demonstrates a pattern of behavior that warrants the imposition of punitive damages under 15 U.S.C. § 1681n. Plaintiff also seeks actual damages for the financial harm and reputational damage suffered as a result of Defendant's actions.

A) Actual damages to be proven at trial pursuant to 15 U.S.C. § 1681n(a);

B) Statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n(a);

C) Punitive damages and equitable relief including, but not limited to, enjoining Defendant from further FCRA violations, pursuant 15 U.S.C. § 1681n(a);

D) The costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3); and

E) Any further legal and equitable relief as this Honorable Court deems just and proper.

### **COUNT III**
### **CHASE VIOLATED 15 U.S.C. § 1691 THROUGH ITS FAILURE TO COMPLY WITH**

## 12 C.F.R. § 1002, *et. seq.*

65. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-47.

66. Chase's decision to close Mr. Mundy's account would be considered an adverse action under 12 C.F.R. 1002.2(c)(1)(ii).

67. As such, Chase was required to notify Mr. Mundy and his businesses of its adverse action(s) with specific disclosures and language as required by 12 C.F.R. 1002.9, which states in subsection (b):

Form of ECOA notice and statement of specific reasons –

(1) ECOA notice. To satisfy the disclosure requirements of paragraph (a)(2) of this section regarding section 701(a) of the Act, the creditor shall provide a notice that is substantially similar to the following: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is [name and address as specified by the appropriate agency or agencies listed in appendix A of this part].

(2) Statement of specific reasons. The statement of reasons for adverse action required by paragraph (a)(2)(i) of this section must be specific and indicate the principal reason(s) for the adverse action. Statements that the adverse action

was based on the creditor's internal standards or policies or that the applicant, joint applicant, or similar party failed to achieve a qualifying score on the creditor's credit scoring system are insufficient.

68. Further, it is Mr. Mundy's belief that Chase did not provide an adequate reason for its decision to close his accounts as required by 12 C.F.R 1002.2(a).

69. As a direct and proximate result of Chase violations of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, and its implementing Regulation B, 12 C.F.R. § 1002, Plaintiff has sustained actual damages.

70. Chase is liable to Mr. Mundy for the actual damages he suffered as a result of Chase's willful or negligent violations of 12 C.F.R. § 1002, *et. seq.*, entitling Plaintiff to recover damages under 15 U.S.C. § 1691e(a).

71. Plaintiff is entitled to statutory damages for Chase's violations of 12 C.F.R. § 1002, *et. seq.* under 15 U.S.C. § 1691e(b) and requests the maximum statutory damages available, which are capped at $10,000 per individual claim, in light of the nature and severity of the discriminatory conduct and the harm suffered.

72. Further, Plaintiff is entitled to recover his costs and reasonable attorney fees incurred in litigating this matter before this Court under 15 U.S.C. § 1691e(d).

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award the following relief:

A) Actual damages to be proven at trial for the harm caused by Defendant's negligent and willful actions under N.Y. Gen. Bus. Law § 349(h), 15 U.S.C. § 1681n(a),

and 15 U.S.C. § 1691e(a).

B) Statutory damages of $1,000 under N.Y. Gen. Bus. Law § 349(h).

C) Treble damages for Defendant's willful deceptive practices under N.Y. Gen. Bus. Law § 349(h).

D) Statutory damages of $10,000 for ECOA violations under 15 U.S.C. § 1691e(b).

E) Punitive damages to deter future violations of the Fair Credit Reporting Act and ECOA.

F) The costs of instituting this action, together with reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1691e(d).

G) Equitable relief, including enjoining Defendant from further violations of FCRA and ECOA.

H) Any further legal and equitable relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: September 24, 2024  
Brooklyn, NY

Respectfully submitted,

*/s/ Marco R. Caridi*  
Marco Caridi Esq.  
9809 4th Ave.  
Brooklyn, NY 11209  
(718) 921-2280

Attorneys for Plaintiff,  
ANTHONY MUNDY